**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

SHIVA STEIN,                                          :
                                                      :
                    Plaintiff,                        :   Civil Action No. 22-cv-10358
                                                      :
v.                                                    :   **COMPLAINT FOR VIOLATIONS OF**
                                                      :   **SECTIONS 14(a) AND 20(a) OF THE**
BENEFITFOCUS, INC., DOUG A.                           :   **SECURITIES EXCHANGE ACT OF**
DENNERLINE, MATT LEVIN,                               :   **1934**
ALEXANDER LERNER, A. LANHAM                           :
NAPIER, JOHN PARK, CORETHA                            :   **JURY TRIAL DEMANDED**
RUSHING, STEPHEN M. SWAD, BRAD                        :
WILSON and ZEYNEP YOUNG,                              :
                                                      :
                    Defendants.                       :
--------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Benefitfocus, Inc. ("Benefitfocus or

the "Company") and the members Benefitfocus' board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of Benefitfocus by affiliates of Voya Corporation ("Voya").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the

"Proxy Statement") to be filed on December 6, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Origami Squirrel Acquisition Corp ("Merger Sub"), a wholly-owned subsidiary of Voya, will merge with and into Benefitfocus with Benefitfocus surviving as a wholly-owned subsidiary of Voya (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on November 1, 2022 (the "Merger Agreement"), each Benefitfocus stockholder will receive $10.50 in cash (the "Merger Consideration") for each Benefitfocus share owned.

3.      As discussed below, Defendants have asked Benefitfocus' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Barclays Capital Inc. ("Barclays") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Benefitfocus' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the NASDAQ Stock Exchange, headquartered in this District, and because the Company's proxy solicitor, Okapi Partners LLC, is also headquartered in this District. Lastly, the closing of the Proposed Transaction will take place at the offices of Sullivan & Cromwell LLP, located in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of Benefitfocus stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Doug A. Dennerline has served as a member of the Board since August 2014 and is the Chairman of the Board.

11.     Individual Defendant Matt Levin has served as a member of the Board since May 2021 and is the Company's President and Chief Executive Officer.

12.     Individual Defendant Alexander Lerner has served as a member of the Board since April 2022.

13.   Individual Defendant A. Lanham Napier has served as a member of the Board since September 2014.

14.   Individual Defendant John Park has served as a member of the Board since August 2021.

15.   Individual Defendant Coretha Rushing has served as a member of the Board since March 2021.

16.   Individual Defendant Stephen M. Swad has served as a member of the Board since May 2021.

17.   Individual Defendant Brad Wilson has served as a member of the Board since October 2021.

18.   Individual Defendant Zeynep Young has served as member of the Board since January 2021.

19.   Defendant Benefitfocus is a Delaware corporation and maintains its principal offices at 100 Benefitfocus Way, Charleston, South Carolina 29492. The Company's stock trades on the NASDAQ Global Select Market under the symbol "BNFT."

20.   The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.   The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.   **The Proposed Transaction**

22.   Benefitfocus provides cloud-based benefits management technology solutions for employers and health plans in the United States. Its products for employers comprise Benefitplace, a cloud-based benefits management portal that streamlines online enrollment, employee

communication, and benefit administration; Health Insights, a data analytics solution; ACA Management and Reporting, a solution for employers to manage ACA compliance; Billing & Payments, an application that synchronizes enrollment and billing information to streamline the monthly billing process, automate adjustments, and enhance accuracy of payments; and COBRA Administration, a solution that simplifies management of Consolidated Omnibus Budget Reconciliation Act, benefits. The Company's products for health plans include Enrollment that provides platform for carriers to automate enrollment across all segments of their commercial group business; Billing & Payments, an electronic invoice presentment and payment solution; Exchange, a solution that bridges the integration gap between health plan and employer systems; and Quoting that gives health plans and brokers tools to organize and proactively manage accounts, track leads, generate quotes, and create proposals for multiple products. Its products for brokers consist of Health Insights that support strategic decisions for their clients with on-demand health plan analytics; Benefit Catalog, which allows brokers to offer products to their clients; and benefit catalog consultative support for brokers through benefit advisors. The Company also provides implementation services to its customers in order to help ensure seamless deployment and effective utilization of its solutions; and employers with expanded support services. The Company was incorporated in 2000 and is headquartered in Charleston, South Carolina.

23. On November 1, 2022, the Company announced the Proposed Transaction:

> NEW YORK & CHARLESTON, S.C.--(BUSINESS WIRE)--Voya Financial, Inc. (NYSE: VOYA), a leading health, wealth and investment company, and Benefitfocus, Inc. (NASDAQ: BNFT), an industry-leading cloud-based benefits administration technology company that serves employers, health plans and brokers, today announced that the companies have entered into a definitive agreement for Voya to acquire Benefitfocus.
>
> Benefitfocus serves the leading brokerage and consulting firms in the health and benefits industry and, through its employer and health

5

plan customers, touches more than 25 million lives on its platform. Combined with its own existing workplace customers, Voya will now serve approximately 38 million individuals or roughly one in 10 Americans following completion of the acquisition.

"Our acquisition of Benefitfocus is an exciting opportunity to accelerate our workplace-centered strategy and increase our capacity to meet the growing demand for comprehensive benefits and savings solutions at the workplace," said Heather Lavallee, president and CEO-elect, Voya Financial, Inc. "Benefitfocus' exceptional talent, strong capabilities, and extensive reach across the benefits industry will expand Voya's ability to deliver innovative solutions for employers and health plans, and help improve the financial, physical, and emotional wellbeing of their employees and members. At the same time, Voya's technology resources, digital capabilities, and operational expertise will add tremendous value to Benefitfocus as it seeks to accelerate its growth and delivery of world-class services to more clients and partners."

"We are excited to become part of Voya – bringing Benefitfocus' portfolio of innovative solutions and services to support the health and wellbeing of more customers through the creation of an end-to-end continuum of offerings across health, wealth and investment," said Matt Levin, president and CEO, Benefitfocus. "This transaction delivers significant and immediate value for our shareholders, broader opportunities for our associates, and strengthens our go-to-market offering with Voya's platform of workplace-centered services and solutions."

**Transaction benefits for clients and intermediaries**

Voya recognizes the importance of maintaining and expanding the freedom of choice that employers and intermediary partners have today when selecting the benefit options that are right for their employees and clients. Benefitfocus will operate as a distinct business under Voya's ownership, with continuity in the existing Benefitfocus management team and a reaffirmed commitment to Benefitfocus' broker, advisor, and carrier relationships.

"This acquisition allows us to expand our capabilities and insights for our customers, while preserving the strength and breadth of our distribution reach," said Rob Grubka, CEO, Health Solutions, Voya Financial, Inc. "Our commitment to an open-architecture, product-agnostic approach at Benefitfocus, and to maintaining strategic partnerships with both clients and intermediaries, is unwavering. Voya will continue to offer valuable and competitive benefit

products and solutions, and we will do so across industry platforms and in partnership with brokers.

"The capabilities and expertise that we gain with Benefitfocus as part of the Voya family will allow us to better serve other benefits administration providers; help brokers with their value proposition to employers; and create powerful, connected experiences with customers and partners across the workplace benefits industry," added Grubka.

**Financial highlights and terms**

In addition to its significant strategic benefits, the transaction is expected to be immediately accretive, on a cash basis, to Voya's adjusted operating earnings per share relative to buybacks and before any future revenue synergies are considered[1]. The transaction — which represents a purchase price premium of approximately 49% over Benefitfocus' closing stock price as of Oct. 31, 2022 — was unanimously approved by Benefitfocus' board of directors, is expected to close in the first quarter of 2023, and is subject to customary closing conditions, including approval by Benefitfocus' shareholders.

"Importantly, this transaction aligns with and supports Voya's commitment to pursuing acquisitions that are both highly strategic and also accretive relative to share repurchases. We continue to prioritize disciplined capital management and deployment in support of our growth plans and to create greater value for all of our stakeholders. Following the completion of the transaction, we will continue to pursue capital deployment actions that build upon our track record of delivering strong value and returns for our shareholders," added Lavallee.

Voya plans to provide further details on the transaction during its third-quarter 2022 earnings call on Wednesday, Nov. 2, 2022, at 10 a.m. ET. The call can be accessed via the company's investor relations website at investors.voya.com. A replay of the call will be available on the company's investor relations website at investors.voya.com starting at 1 p.m. ET on Nov. 2, 2022.

Perella Weinberg Partners LP is serving as financial advisor, and Cleary Gottlieb Steen & Hamilton LLP is serving as legal counsel to Voya in connection with this transaction. Barclays served as financial advisor, and Sullivan & Cromwell LLP served as legal counsel to Benefitfocus.

* * *

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Benefitfocus' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

25.     On December 6, 2022, Benefitfocus filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by Benefitfocus management and relied upon by Barclays in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Barclays with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Benefitfocus management provided to the

Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). In the case of Unlevered Free Cash Flow, the Proxy Statement also fails to disclose the definition of or formula to calculate the metric.

28.     The Proxy Statement also fails to disclose the management prepared Company NOL Projections, which was relied upon by Barclays to arrive at its fairness opinion.

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a
> uniform definition and its title does not describe how it is calculated.

Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.     With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose the financial metrics of Alight Solutions LLC, the sole comparable company selected by Barclays for the analysis.

33.     With respect to Barclays' *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

34.     With respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value of Benefitfocus; (ii) the inputs and assumptions underlying the use of Adjusted EBITDA exit multiples ranging from 9.5x to 11.5x; (iii) the inputs and assumptions underlying the use of the range discount rates of 11.0% to 13.0%; (iv) the present value of tax savings post-2026 from Benefitfocus' net operating losses.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

35.    With respect to Barclays' *Illustrative Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for applying a range of NTM EV/EBITDA multiples of 9.0x to 11.0x to estimates of the Company's NTM Adj. EBITDA; (ii) the basis for applying the discount rate of 15.0%.

36.    With respect to Barclays' *Equity Research Target Prices Review*, the Proxy Statement fails to disclose: (i) the three equity research firms that covered Benefitfocus as of October 31, 2022; and (ii) the price targets published by these firms.

37.    With respect to Barclays' *Precedent Transactions Premium Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions reviewed and analyzed by Barclays; and (ii) the premia paid in those selected transactions.

38.    In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### <u>COUNT I</u>

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

44.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Benefitfocus within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Benefitfocus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Benefitfocus, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Benefitfocus, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 7, 2022                      **MELWANI & CHAN LLP**

                                    By:   */s/ Gloria Kui Melwani*
                                          Gloria Kui Melwani (GM5661)
                                          1180 Avenue of the Americas, 8th Fl.
                                          New York, NY 10036
                                          Telephone: (212) 382-4620
                                          Email: gloria@melwanichan.com

                                          *Attorneys for Plaintiff*